**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

The United States of America and the State of Illinois
*Ex Rel.* Ricky Naylor,                                    Civ. A. No.:

     Plaintiff,     FILED UNDER SEAL

  v.

Universal Health Services, Inc. d/b/a UHS,
Psychiatric Solutions, Inc., BHC Streamwood Hospital, Inc.
d/b/a Streamwood Behavioral Healthcare System d/b/a
Rock River Academy and Residential Center,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## COMPLAINT FOR VIOLATIONS
## OF THE FEDERAL FALSE CLAIMS ACT AND THE ILLINOIS FALSE CLAIMS ACT

12cv7552
Judge Holderman
Mag. Judge Finnegan



FILED

SEP 2 1 2012

[illegible stamp]

This is a civil fraud action brought by a private person known as a *qui tam* relator, or whistleblower, on behalf of the United States of America and the State of Illinois, pursuant to the *qui tam* provisions of the Federal False Claims Act, 31 U.S.C. § 3729 *et. seq.*. and the Illinois False Claims Act, 740 I.L.C.S. § 175/1 *et seq.*

## INTRODUCTION

On behalf of the United States of America, the State of Illinois and himself, Relator Ricky Naylor ("Relator") files this *qui tam* complaint against Universal Health Services, Inc. d/b/a UHS ("UHS"), Psychiatric Solutions, Inc. ("PSI"), BHC Streamwood Hospital Inc. d/b/a Streamwood Behavioral Healthcare System ("Streamwood"), and Rock River Academy and Residential Center ("Rock River"), (collectively "Defendants") and alleges as follows:

1.      This is a civil action to recover damages and penalties on behalf of the United States of America and the State of Illinois, arising from false claims and statements made and presented by the Defendants and/or its agents and employees in violation of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. and the Illinois False Claims Act ("Illinois FCA"), 740 I.L.C.S. § 175/1 *et seq.*   The violations alleged herein involve false and fraudulent claims the Defendants have made or caused to be made since on or before November 2007.  It is estimated that this fraud has cost the Medicaid Program millions of dollars each year, and is ongoing.

2.      Both the FCA and the Illinois FCA provide that any person who knowingly submits or causes to be submitted, a false or fraudulent claim, to the government for payment or approval, is liable for civil penalties for each such claim submitted or paid,

2

plus up to three times the amount of the damages sustained by the government as well as other relief the court may deem appropriate.

3.      Liability attaches under both false claims acts when a defendant submits or causes another to submit a claim for payment from government funds that the defendant knows is unwarranted and when false records or statements are knowingly made or used to get a false or fraudulent claim for government funds paid or approved.

4.      Liability also attaches under both false claims acts when a defendant knowingly makes, uses, or causes to be made, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money to the government.

5.      The FCA and the Illinois FCA permit any person having information regarding a false or fraudulent claim for payment from government funds to bring an action for himself as the Relator and for the government and allow him to share in any recovery.  It is a requirement under both false claims acts that the Complaint be filed under seal (without service on the Defendants) to enable the government to conduct its own investigation without the Defendants' knowledge and to allow the government an opportunity to intervene in the action.

6.      Pursuant to these provisions, Relator, Ricky Naylor, seeks to recover damages and civil penalties on behalf of the United States, the State of Illinois, and himself, based upon the Defendants' presentation of false and fraudulent records, claims, and statements and certifications made to the United States of America and the State of Illinois, in connection with Defendants' practices and programs funded through the Medicaid program.   Relator seeks to recover all available damages, civil penalties, and

3

all other relief for available for expenditures impacted by Defendants' fraud, including all expenditures by the United States and the State of Illinois

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and 1345.  The underlying facts which support this Court's jurisdiction are set forth below in greater detail.

8.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the Defendant is located within this district and because acts set out in 31 U.S.C. § 3729 occurred within this district.

9.     Relator, Ricky Naylor brings this action on behalf of himself and the Government pursuant to 31 U.S.C. § 3730(b)(1) and 740 I.L.C.S. § 175/4(b).

## PARTIES

10.     The Relator, Mr. Ricky Naylor served as a Program Specialist and Supervisor at Rock River from 2007 through 2011.  In that capacity, he supervised a team of behavioral health technicians responsible for the daily care, counseling and support of the residents.  He also worked at various juvenile mental health facilities, owned and operated by PSI and UHS, aside from Rock River, from 2001 through 2011. Mr. Naylor has a Master's Degree in Business Management from Cardinal Stritch University in Milwaukee, Wisconsin and a Bachelor of Arts in Political Science from Northern Illinois University.

4

11.     Defendant UHS is a Delaware corporation with its headquarters located at 367 South Gulf Road, King of Prussia, Pennsylvania.   UHS acquired PSI on November 15, 2010.  UHS owns and operates acute care hospitals, behavioral health centers – including Streamwood and Rock River, surgical hospitals, ambulatory surgery centers and radiation oncology centers throughout the U.S. As of February 24, 2012, UHS owned and/or operated 25 acute care hospitals and 198 behavioral health centers located in 36 states, Washington, D.C., Puerto Rico and the United States Virgin Islands. UHS is a Fortune 500 company.

12.     Defendant PSI was acquired by UHS on November 15, 2010.  PSI owned and operated Streamwood and, thereby Rock River, prior to the acquisition.   PSI's headquarters were formerly located in Franklin, Tennessee.

13.     Defendant Streamwood is a psychiatric hospital and behavioral health system which is now owned and operated by UHS.  Streamwood Hospital is located at 1400 East Irving Park Road, Streamwood, IL 60107.   Streamwood's behavioral healthcare system includes Rock River as well as other residential facilities and day schools.

14.     Defendant Rock River is a day school and residential treatment center for youths with emotional and psychological problems located at 3445 Elmwood Road Rockford, IL 61103.  Rock River is a part of the Streamwood behavioral healthcare system. Rock River's day school opened in November 2007.   The day school side of the facility has approximately 40 students, mostly coming from the local school district.   The residential side of the facility opened in April 2008, and averages 30 – 40 female residents.   The residential program is licensed to serve up to 59 residents between the

5

ages of ten and twenty-one years of age who have any psychiatric diagnoses and IQs of 65 or greater, but have no conduct disorders as primary diagnoses and no mental retardation.

GENERAL ALLEGATIONS

15.    In fiscal year 2010, the State of Illinois spent over $15 billion on Medicaid[1] and Illinois' Medicaid Program expenditures were the sixth highest in the country.

16.    For the past several years, the federal government has paid for at least 50% of overall Medicaid spending in Illinois.   The remainder is paid by the State.[2]

17.    Medicaid is the single largest payer for mental health services in the United States. Although federal law does not contain explicit provisions concerning the exact types of mental health services that can be provided, all state Medicaid programs provide some mental health services to enrollees.

18.    Medicaid reimbursement is available for mental and behavioral health services covered under various service categories: physician's services, inpatient and outpatient hospital services, licensed practitioner's services, clinics, rehabilitative services, inpatient psychiatric hospital services for individuals under age 21, as well as, prescription drugs.   The allegations in this Complaint pertain to inpatient psychiatric hospital services for individuals under age 21.

---

[1]  See Total Medicaid Spending - Illinois - Kaiser State Health Facts, AIllinois: Total Medicaid Spending,@ FY 2010-
http://statehealthfacts.org/profileind.jsp?rgn=15&cat=4&ind=177.

2 See Illinois: Federal Medical Assistance Percentage (FMAP) for Medicaid and Multiplier - http://statehealthfacts.org/profileind.jsp?ind=184&cat=4&rgn=15.

19.     Title XIX of the Social Security Act (42 U.S.C. § 1396 *et seq.*), known as the Medicaid Act, grants states the authority to provide additional mental health services in accordance with a State's Medicaid Plan.   The federal portion of these services is reimbursed through the CMS-64 reporting process.

20.     In Illinois, the Department of Healthcare and Family Services (HFS) is responsible for administering the Medicaid program.   Title 59, Chapter IV, Part 132 of the Illinois Code addresses the requirements for the provision and reimbursement of mental health services under Medicaid.

21.     For the juvenile patients who reside at Rock River, Medicaid pays for their room and board as well as their medications and counseling sessions. Most of the patients are wards of the State and have been placed at Rock River as a result of a court order.

22.     At all times relevant to this Complaint, Defendants' knew that their participation in the Medicaid program was governed by an "Agreement for Participation Illinois Medical Assistance Program" with the HFS ("Provider Agreement"). Significantly the Provider Agreement provides that:

> **The Provider agrees to be fully liable for the truth, accuracy and completeness of all claims submitted electronically or on hard copy to the Department for payment.**  Provider acknowledges that it understand the laws and handbook provisions regarding services and certifies that the services will be provided in compliance with such laws and handbook provisions.  **Provider further acknowledges that compliance with such laws and handbook provisions is a condition of payment for all claims submitted.   Any submittal of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.**  *See* Provider Agreement at ¶ 6 (emphasis added).

23.     The Provider Agreement also provides, among other things, that:

> a. The Provider agrees, on a continuing basis, to comply with all current and future program policy and billing provisions as set forth in the applicable Healthcare and Family Services Medical Assistance Program rules and handbooks.
>
> b. The Provider agrees, on a continuing basis, to comply with applicable licensing standards as contained in State laws or regulations.
>
> c. The Provider agrees, on a continuing basis, to comply with Federal standards specified in Title XIX and XXI of the Social Security Act and with all other applicable Federal and State laws and regulations.

24.     The applicable federal laws which Defendants are required to comply with include 42 C.F.R. § 441.150 *et seq.*, pertaining to inpatient psychiatric services for individuals under age 21 in psychiatric facilities or programs.   Among these requirements are:

> a. Inpatient psychiatric treatment for an individual under the age of 21 must be provided under the direction of a physician.   See 42 C.F.R. § 441.151(a).
>
> b. The Provider must certify that the services can reasonably be expected to improve the individual's condition or prevent further regression. See 42 C.F.R. § 441.152(a)(3).
>
> c. Inpatient psychiatric services must involve "active treatment," which means implementation of a professionally developed and supervised plan of care, that is put in place no more than 14 days after admission

8

and designed to achieve the patient's discharge from inpatient status as soon as possible. *See* 42 C.F.R. § 441.154.

d. An individual plan of care must include specific criteria detailed in 42 C.F.R. § 441.155(b) and must be reviewed every 30 days to ensure that the services being provided are required on an inpatient basis and to recommend any changes to the plan. *Id.* at subsection (c).

e. The team developing an individual's plan of care must include a board eligible or board certified psychiatrist, a clinical psychiatrist, a licensed M.D. or D.O., and either a psychiatric social worker, an R.N. with specialized experience, an occupational therapist with specialized experience, or a psychologist with a master's degree in clinical psychology or who has been certified by the State.

25.    The Illinois Administrative Code contains additional requirements on the provision of mental health services.

26.    Except under emergency circumstances, a mental health assessment is required prior to the creation of an individual treatment plan ("ITP"). *See* 59 Ill. Adm. Code §132.148(c)(1).

27.    An ITP must be completed within 45 days of the mental health assessment and must include: (a) the goals/anticipated outcomes of services; (b) intermediate objectives to achieve goals; (c) the specific Part 132 mental health services to be provided; (d) the amount, frequency and duration of Part 132 services to be provided; and (e) staff responsible for delivering services. *Id.* at § 132.148(c)(2).

9

28.     ITPs must be signed by the physician or licensed practitioner of the healing arts ("LPHA") who is responsible for reviewing the ITP.  *Id.* at § 132.148(c)(4).   ITPs must be reviewed no less than once every six months to determine if the goals set forth in the ITP are being met and whether the ITP requires modification. *Id.* at § 132.148(c)(5).

29.     Further, the Illinois State Medicaid Manual, section 4385(B), provides that, to be reimbursable, mental health services must involve direct patient care and must be for the express purpose of diagnosing, treating or preventing illness, injury, or other impairments to an individual's mental health.

## SPECIFIC ALLEGATIONS

30.     In approximately the Fall of 2010, Rock River became owned and operated by UHS under the umbrella of Streamwood.   Prior thereto, Rock River was owned and operated by PSI.   Relator Naylor was continuously employed at Rock River from its inception in 2007, prior to UHS's ownership, and through September 2011.

31.     During the course of his employment, Relator Naylor became aware of the several false billing and fraudulent activities, which began at the time of Rock River's inception, and which increased and expanded at the time UHS took over in 2010, and which continue to this day.   The following paragraphs outline the Defendants' false billing and fraudulent activities from 2007 to date.

32.     Phantom Charges and Overbilling.   Rock River's therapists are over-billing for individual counseling sessions with residents and billing for phantom counseling sessions and/or billing for counseling sessions which are not supported by the documentation in the patients' files.

10

33.     Moreover, Rock River's Behavioral Health Technicians, Mental Health Counselors and other staff also overbill and bill for phantom individual counseling sessions and non-existent group sessions relating to anger management, social skills, and community and reflection goals.

34.     Incomplete, Unsigned and Out-of-Date ITPs.   Individual Treatment Plans for the patients at Rock River do not comply with state and federal regulations. Many are unsigned, incomplete, not reviewed as required by law and/or completely missing from the patients' files.   Often "updated" ITPs are merely a Xerox copy of an old ITP with a new date and signature.

35.     Phantom Medical Direction.   Mental health services at Rock River are supposed to be provided under the direction of a licensed psychiatrist, Dr. Joseph McNally, who holds the title of medical director.   However, Dr. McNally, visits the facility on average once a month and does nothing more than sign prescriptions and other documents, as to create the illusion that he is actually providing the required medical direction.   Moreover, Dr. McNally, routinely backdates documents, and signs documents in blank or without reviewing their contents.

36.     In addition, two other psychiatrists at Rock River, Dr. Richard L. Jaconette and Dr. Martha Crotts, also do not contribute, as required by law, to the ITPs and overall medical direction of the patients at Rock River.   Instead, behavioral health technicians, many of whom do not even hold a college degree, and therapists, many of whom are unlicensed, are the chief contributors to the patients' ITPs and overall medical direction.

37.     Unlicensed Therapists.   The team at Rock River charged with creating the ITPs for its residents consists of a mix and licensed and unlicensed therapists and

11

behavioral health technicians.   The unlicensed therapists and behavioral health technicians craft ITPs, without the direction of a psychiatrist or licensed physician, in violation of state and federal law.   The unlicensed therapists, behavioral health technicians and other unlicensed staff also hold and bill for individual counseling sessions with patients, without the presence of a licensed therapist.

38.   ITPs are Not Personalized For Each Patient.   ITPs at Rock River are often created with boilerplate language which does not account for individual residents' needs and mental health goals as required by state and federal law.

39.   Prolonged Stays and Delayed Discharges.   ITPs at Rock River are not created and monitored routinely as to ensure that the residents are meeting their goals and being discharged in a timely manner.   In fact, most residents spend an average of two to three years at Rock River, regardless of their diagnosis and mental health condition upon arrival.

40.   Delaying the discharge of a patient allows the Defendants to prolong their false billing scheme and make more money.   In fact, so-called "discharge planners," hired to assist in transitioning patients out of Rock River, do not meet with residents on a monthly basis as required by law.

41.   Medication Documentation.   Medications prescribed to residents are not properly documented and/or residents are often given medications other than that prescribed.

42.   Rock River's Executive Director acknowledged this problem in February 14, 2012 memorandum which directed all residential staff that "[m]edication documentation is not an option."

12

43.     Further, in 2009, the Illinois Guardianship & Advocacy Commission, made specific findings as to a patient at Rock River who was prescribed certain types of medication and was actually being given completely different medications.

44.     At all times relevant hereto, Defendants, through their officers, managers and employees, directed and/or were aware that the above violations were occurring and that they continue to occur at Rock River and other UHS facilities.

45.     By way of example, with regard to billing procedures, Rock River's Interim Executive Director, Donald T. Cutaiar stated the following, in a Memorandum issued to "All Residential Staff," on February 14, 2012:

> The following are existing guidelines and some new expectations [for billing]:
> - 2 units of individual per resident on PM shift 7 days a week and AM shift on weekends.
> - Group notes on every resident for each Medicaid Eligible Group 7 days per week on PMs and AM shifts on weekends.
> - 4 units of Individual for any resident not in school.
> - 1 unit per resident on AM Shift Monday – Friday **(new expectation)**.
> - 1 unit per resident on the Overnight Shift (for those meeting the qualifications to bill) when residents are awake and interacting with staff **(new expectation)**.
> - Billing during transports i.e., anxiety for visits, processing a visit etc. **(new expectation).**
> - Billing while sitting in the Emergency Room **(new expectation)**.

46.     In his memorandum, it is clear that Mr. Cutaiar is mandating that these existing and new "expectations" be met by the staff without any consideration for actual patient need or what is actually called for in the patient's ITP.

47.     Rock River's financial success clearly takes precedence over the welfare of its juvenile patients.   In the same memorandum, Mr. Cutaiar makes this crystal clear by directing is staff as follows:

Please understand that it is understood that we may all feel that we are at our limit and continually are asked to squeeze blood out of a turnip, but, we are over $100,000 under our billing expectation.   If this is not corrected by the end of June 2012, we will be in a situation to pay this money back to the State which in turn could number our days of staying open.

48.    In a subsequent memorandum, dated July 5, 2012, Mr. Cutaiar summarized the findings of a recent audit conducted by HFS, which, even in his view, concluded that:

a.  notes used for billing mental health services lacked specifics;

b.  "… individual notes done on the same day with different residents that had exactly the same Interventions or individual notes that has the same Interventions for a resident several sessions in a row.   This is considered to be 'cookie cutter' documentation and **evidence of fraud**." (*Emphasis added*);

c.  Interventions were not individualized for each patient and did not reflect the "unique nature of each session."; and

d.  Overbilling – "[a]uditors identified several instances where one unit sessions appeared artificially inflated to be two unit sessions …".

49.    Moreover, in 2009, the Illinois Guardian and Advocacy Commission, acting on a tip made by the guardian of a Rock River patient, investigated the facility to verify the complaints made.   *See* Report No. 09-080-9008.   The investigation confirmed that the patient was left unmonitored and ran away from the facility on at least two occasions. The patient's ITPs were not signed, one was missing and one month's ITP contained pages which appeared to be Xerox copies of the ITP from a previous month.   Moreover, the medication documentation was sparse and the patient was receiving different medications than those prescribed.

14

50.    The directions to commit this fraudulent billing scheme come directly from UHS and the fraud and mismanagement impacts the other residential mental health facilities and hospitals owned and operated by UHS.   For example:

- The Riveredge Hospital, located in Forest Park, Illinois, entered into a Plan of Correction with the U.S. Department of Health and Human Services in September 2008 for violations pertaining to federal Medicaid regulations.

- The University of Chicago conducted a study in 2009, which revealed that juvenile patients at Streamwood Hospital in Streamwood, Illinois were overmedicated and the hospital itself is understaffed.

- In 2011, the University of Chicago conducted another study, which found that UHS's Hargrove Hospital, another juvenile mental health facility, was rampant with violence and sexual assaults.

- On March 28, 2012, the U.S. Department of Justice announced that it had reached a $6.85 million settlement with UHS and two of its subsidiaries, juvenile mental health facilities in Virginia, based upon allegations similar to those made by the Relator herein with regard to Rock River.

## COUNT I:    VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT (31 U.S.C. § 3729 (a)(1))

51.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 of this Complaint.

52.    This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729 (a)(1), as amended.

15

53.     By virtue of the acts described above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented or caused to be presented to the United States Government false or fraudulent claims for Medicaid funding relating to inpatient mental health services for individuals under the age of 21.

54.     Such claims were false or fraudulent because the Defendants engaged in overbilling, billed for phantom services, and otherwise failed to comply with federal law regarding patients' individual treatment plans, medical direction, discharge planning and medication documentation.

55.     The United States, unaware of the falsity of the claims made by the Defendants, paid the Defendants for claims that would otherwise not have been allowed.

56.     By knowingly failing to comply with requirements upon which payment was contingent, each claim presented by Defendants was false.

57.     By knowingly, willfully or recklessly presenting false claims for payment to the United States, Defendants have defrauded the United States in contravention of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), to the damage of the treasury of the United States of America, by causing the United States to pay out money that it was not obligated to pay.  In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the United States' decision to pay these false claims.

58.     By knowingly, willfully or recklessly causing others to present false claims for payment/reimbursement to the United States, Defendants have defrauded the United States in contravention of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), to the damage of the treasury of the United States of America, by causing the United States to pay out

money it was not obligated to pay.    In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the United States' decision to pay these false claims.

59.    As a direct and proximate result of Defendants' fraudulent and/or illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly thousands of false claims that it would not otherwise have paid.

60.    Damages to the United States include, but are not limited to, three times the full value of all such fraudulent claims.

61.    Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand five hundred to eleven thousand dollars ($5,500 - $11,000).

## COUNT II:    VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT (31 U.S.C. § 3729 (a)(1)(B))

62.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 61 of this Complaint.

63.    This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729 (a)(1)(B), as amended.

64.    By virtue of the acts described above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, made, used, and caused to be made and used, false records and statements, including the CMS-64, material to a false or fraudulent claim in connection with its submission of claims for Medicaid funding relating to inpatient mental health services to individuals under the age of 21.

17

65.     The United States, unaware of the falsity of the records and statements, paid the Defendants for claims that would otherwise not have been allowed.

66.     Because Defendants knowingly failed to comply with requirements upon which payment was contingent, any certifications made relating to emergency medical services to undocumented aliens were false.

67.     By knowingly, willfully or recklessly making false statements and certifications material to the United States' decision to pay on false claims, Defendants have defrauded the United States in contravention of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), to the damage of the treasury of the United States of America, by causing the United States to pay out money that it was not obligated to pay.   In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the United States' decision to pay these false claims.

68.     By knowingly, willfully or recklessly causing others to make false statements and certifications material to the United States' decision to pay on false claims, Defendants have defrauded the United States in contravention of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), to the damage of the treasury of the United States of America, by causing the United States to pay out money it was not obligated to pay.   In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the United States' decision to pay these false claims.

69.     As a direct and proximate result of Defendants' fraudulent and/or illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly thousands of false claims that it would not otherwise have paid.

18

70.     Damages to the United States include, but are not limited to, three times the full value of all such fraudulent claims.

71.     Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand five hundred to eleven thousand dollars ($5,500 - $11,000).

## COUNT III:     VIOLATIONS OF THE ILLINOIS FALSE CLAIMS ACT
## (740 I.L.C.S. § 175/3(A))

72.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 of this Complaint.

73.     This is a claim for treble damages and civil penalties under the Illinois False Claims Act, 740 I.L.C.S. § 175/3.

74.     By virtue of the acts described above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, caused false or fraudulent claims for payment or approval for mental health services to be presented to HFS for payment by Medicaid.

75.     Such claims were false or fraudulent because the Defendants engaged in overbilling, billed for phantom services, and otherwise failed to comply with federal law regarding patients' individual treatment plans, medical direction, discharges and medication documentation.

76.     The State of Illinois, unaware of the falsity of the claims made by the Defendants, paid the Defendants for claims that would otherwise not have been allowed.

19

77.     By knowingly failing to comply with requirements upon which payment was contingent, each claim presented by Defendants was false.

78.     By knowingly, willfully or recklessly presenting false claims for payment to the State of Illinois, Defendants have defrauded the State of Illinois in contravention of the False Claims Act, 740 I.L.C.S. § 175/3(A), to the damage of the treasury of the State of Illinois, by causing the State of Illinois to pay out money that it was not obligated to pay. In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the State of Illinois' decision to pay these false claims.

79.     By knowingly, willfully or recklessly causing others to present false claims for payment/reimbursement to the State of Illinois, Defendants have defrauded the State of Illinois in contravention of the False Claims Act, to the damage of the treasury of the State of Illinois, by causing the State of Illinois to pay out money it was not obligated to pay.  In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the State of Illinois' decision to pay these false claims.

80.     As a direct and proximate result of Defendants' fraudulent and/or illegal actions and pattern of fraudulent conduct, the State of Illinois has paid directly or indirectly thousands of false claims that it would not otherwise have paid.

81.     Damages to the United States include, but are not limited to, three times the full value of all such fraudulent claims.

20

82.     Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand five hundred to eleven thousand dollars ($5,500 - $11,000).


COUNT IV:     VIOLATIONS OF THE ILLINOIS FALSE CLAIMS ACT
(740 I.L.C.S. § 175/3(B))

83.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 82 of this Complaint.

84.     This is a claim for treble damages and civil penalties under the False Claims Act, 740 I.L.C.S. § 175/3(B).

85.     By virtue of the acts described above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, made, used, and caused to be made and used, false records and statements, material to a false or fraudulent claim in connection with its submission of claims for Medicaid funding relating to inpatient mental health services provided to individuals under the age of 21.

86.     The State of Illinois, unaware of the falsity of the records and statements, paid the Defendants for claims that would otherwise not have been allowed.

87.     Because Defendants knowingly failed to comply with requirements upon which payment was contingent, any certifications made relating to emergency medical services to undocumented aliens were false.

88.     By knowingly, willfully or recklessly making false statements and certifications material to the State of Illinois' decision to pay on false claims, Defendants have defrauded the State of Illinois in contravention of the False Claims Act, to the

21

damage of the treasury of the State of Illinois, by causing the State of Illinois to pay out money that it was not obligated to pay.   In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the State of Illinois' decision to pay these false claims.

89.     By knowingly, willfully or recklessly causing others to make false statements and certifications material to the State of Illinois' decision to pay on false claims, Defendants have defrauded the State of Illinois in contravention of the False Claims Act, to the damage of the treasury of the State of Illinois, by causing the State of Illinois to pay out money it was not obligated to pay.   In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the State of Illinois' decision to pay these false claims.

90.     As a direct and proximate result of Defendants' fraudulent and/or illegal actions and pattern of fraudulent conduct, the State of Illinois has paid directly or indirectly thousands of false claims that it would not otherwise have paid.

91.     Damages to the State of Illinois include, but are not limited to, three times the full value of all such fraudulent claims.

92.     Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act of five thousand five hundred to eleven thousand dollars ($5,500 - $11,000).

22

WHEREFORE, Relator Ricky Naylor requests that judgment be entered against Defendant, ordering that:

    a.  Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.* and the Illinois State False Claims Act, 740 I.L.C.S. § 175/1 *et seq.*;

    b.  Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 and 740 I.L.C.S. § 175/1 *et seq.* plus three times the amount of damages the United States and State of Illinois have sustained because of Defendants' actions;

    c.  Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and 740 I.L.C.S. § 175/4(d);

    d.  Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) and 740 I.L.C.S. § 175/4(d);

    e.  Defendants be enjoined from concealing, removing, encumbering or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

    f.  Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

    g.  The United States, the State of Illinois and Ricky Naylor recover such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:      September   21, 2012                    /s/Alan J. Konigsberg

                                                    Alan J. Konigsberg (AJK/6373)
                                                    Theresa A. Vitello (TAV/0623)
                                                    Levy Phillips & Konigsberg, LLP
                                                    800 Third Ave., 11th Floor
                                                    New York, NY 10022
                                                    Tel.:   (212) 605-6200
                                                    Fax:   (212) 605-6290

                                                    Michael Kanovitz
                                                    Jon Loevy
                                                    Scott R. Rauscher
                                                    Loevy & Loevy
                                                    312 North May Street, Suite 100
                                                    Chicago, Illinois 60607
                                                    Tel. (312) 243-5900
                                                    Fax: (312) 243-5902

                                                    *Attorneys for the Relator*
                                                    *Ricky Naylor*

# LOEVY & LOEVY

## ATTORNEYS AT LAW

Russell Ainsworth
Steve Art
Roshna Bala Keen
Vincenzo Field
Gayle Horn
Michael Kanovitz
Heather Lewis Donnell
Samantha Liskow
Arthur Loevy
Danielle Loevy
Jon Loevy
Debra Loevy-Reyes

312 N. May Street
Suite 100
Chicago, Illinois 60607

12cv7552
Judge Holderman
Mag. Judge Finnegan

Elizabeth Mazur
Pier Petersen
Scott Rauscher
Rachel Steinback
Anand Swaminathan
Julie Thompson
Tara Thompson
Cindy Tsai
Daniel Twetten
Elizabeth Wang

Telephone 312.243.5900
Facsimile 312.243.5902

Website www.loevy.com
Email loevylaw@loevy.com

---

**CONFIDENTIAL AND PRIVILEGED**

September 21, 2012

FILED

SEP 2 1 2012

____ ___ ___ ___
CLERK, U.S. DISTRICT COURT

**By Hand Delivery**

Clerk of Court
U.S. District Court for Northern District of Illinois
219 South Dearborn
Chicago, Illinois 60604

Re: Request to file complaint under seal and *in camera*

Dear Sir or Madam:

Pursuant to Local Rule 5.7, this serves as a written request to file under seal and *in camera* the Complaint and accompanying papers in *United States ex rel. Naylor v. Universal Health Services, Inc., Psychiatric Solutions, Inc., BHC Streamwood Hospital, Inc., and Rock River Academy and Residential Center*.

The Complaint is being filed pursuant to 31 U.S.C. § 3730. Unless otherwise ordered by the court, the matter shall remain restricted for the period specified in 37 U.S.C. § 3730.

Should you have any questions or concerns, I can be contacted at scott@loevy.com or (312) 243-5900. Thank you for your attention to this matter.

Very truly yours,

Scott Rauscher

Scott R. Rauscher

Enclosures

12cv7552
Judge Holderman
Mag. Judge Finnegan

# NEW
# CIVIL CASE

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States ex rel. Naylor | Universal Health Services, Inc., Psychiatric Solutions, Inc., BHC Streamwood Hospital, Inc. and Rock River Academy and Residential Center |
| **(b)** County of Residence of First Listed Plaintiff _____<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant **Montgomery Co., PA**<br>NOTE: In land condemnation cases, use the location of the tract of land involved. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Loevy & Loevy (312) 243-5900<br>312 North May Street, Suite 100<br>Chicago, Illinois 60607 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION  *(Place an "X" in One Box Only)*

- ■ 1  U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF ~~PRINCIPAL PARTIES~~ *(For Diversity Cases Onl~~y~~)*

Citizen of This State
Citizen of Another State
Citizen or Subject of a Foreign Country

12cv7552
Judge Holderman
Mag. Judge Finnegan

✓ Plaintiff)
)
'EF
]4

## IV. NATURE OF SUIT  *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

**SEP 2 1 2012**

## V. ORIGIN  *(Place an "X" in One Box Only)*

- ■ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

CLERK, U.S. DISTRICT COURT

**VI. CAUSE OF ACTION** (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)
31 U.S.C., Section 3730
This is an action under the Federal False Claims Act

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:  ■ Yes  ☐ No |
|---|---|---|---|

**IX. This case (check one box)**  ☐ is not a refiling of a previously dismissed action
☐ is a refiling of case number _____ previously dismissed by Judge _____

| Date | Signature of Attorney of Record |
|---|---|
| 9/21/2012 | Scott Lewsum |

**U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**ATTORNEY APPEARANCE FORM**

NOTE: In order to appear before this Court an attorney mus
standing of this Court's general bar or be granted leave to ap
by Local Rules 83.12 through 83.14.

12cv7552
Judge Holderman
Mag. Judge Finnegan

In the Matter of
United States ex rel. Naylor, Plaintiff,
v.
UniversalHealthServices,Inc., Psychiatric Solutions,Inc.,
BHC Streamwood Hospital, Inc., and Rock River Academy and
Residential Center, Defendants.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

United States ex rel. Naylor

FILED

SEP 2 1 2012

CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NAME (Type or print)<br>Jon Loevy | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>s/ Jon Loevy | |
| FIRM<br>LOEVY & LOEVY | |
| STREET ADDRESS<br>312 North May Street, Suite 100 | |
| CITY/STATE/ZIP<br>Chicago, Illinois 60607 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br>6218254 | TELEPHONE NUMBER<br>(312) 243-5900 |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ✔ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ✔ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ✔ | NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ✔ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

**U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**ATTORNEY APPEARA**

NOTE: In order to appear before this Court an attorne
standing of this Court's general bar or be granted leave
by Local Rules 83.12 through 83.14.

12cv7552
Judge Holderman
Mag. Judge Finnegan

In the Matter of
United States ex rel. Naylor, Plaintiff,
v.
UniversalHealthServices,Inc., Psychiatric Solutions,Inc.,
BHC Streamwood Hospital, Inc., and Rock River Academy and
Residential Center, Defendants.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:
United States ex rel. Naylor

FILED

SEP 2 1 2012

| | |
|---|---|
| NAME (Type or print)<br>Scott Rauscher | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>s/ Scott Rauscher | |
| FIRM<br>LOEVY & LOEVY | |
| STREET ADDRESS<br>312 North May Street, Suite 100 | |
| CITY/STATE/ZIP<br>Chicago, Illinois 60607 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br>6287162 | TELEPHONE NUMBER<br>(312) 243-5900 |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ✔ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ✔ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ✔ | NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ✔ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

**U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
ATTORNEY APPEARANCE FORM**

NOTE: In order to appear before this Court an attorney must
standing of this Court's general bar or be granted leave to app
by Local Rules 83.12 through 83.14.

12cv7552
Judge Holderman
Mag. Judge Finnegan

In the Matter of
United States ex rel. Naylor, Plaintiff,
v.
UniversalHealthServices,Inc., Psychiatric Solutions,Inc.,
BHC Streamwood Hospital, Inc., and Rock River Academy and
Residential Center, Defendants.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:
United States ex rel. Naylor

FILED

SEP 2 1 2012

G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NAME (Type or print)<br>Michael Kanovitz | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>s/  Michael Kanovitz | |
| FIRM<br>LOEVY & LOEVY | |
| STREET ADDRESS<br>312 North May Street, Suite 100 | |
| CITY/STATE/ZIP<br>Chicago, Illinois 60607 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br>6275233 | TELEPHONE  NUMBER<br>(312) 243-5900 |

| | |
|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐   NO ☑ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑   NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑   NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐   NO ☑ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

## United States District Court for the Northern District of Illinois

Case Number:   12CV7552          Assigned/Issued By:  JN

Judge Name:   HOLDERMAN          Designated Magistrate Judge:  FINNEGAN

---

### FEE INFORMATION

**Amount Due:**   ☑ $350.00      ☐ $39.00      ☐ $5.00

☐ IFP      ☐ No Fee      ☐ Other _____

☐ $455.00

Number of Service Copies _____          Date: _____

#### (For Use by Fiscal Department Only)

Amount Paid: 350 _____          Receipt #: 4624086810 _____

Date Payment Rec'd: 9-21-12 _____          Fiscal Clerk: JN _____

---

### ISSUANCES

☐ Summons                          ☐ Alias Summons

☐ Third Party Summons              ☐ Lis Pendens

☐ Non Wage Garnishment Summons     ☐ Abstract of Judgment

☐ Wage-Deduction Garnishment Summons   _____

☐ Citation to Discover Assets          _____
                                        (Victim, Against and $ Amount)

☐ Writ _____
         (Type of Writ)

_____Original and _____ copies on _____ as to _____
                                          (Date)

_____

_____

C:\wpwin80\docket\feeinfo.frm    03/14/05